UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JEANNA NORRIS,                     )<br>            Plaintiff,          )<br>                                    )<br>-v-                                 )<br>                                    )<br>SAMUEL L. STANLEY, JR., ET AL.,     )<br>            Defendants.            )<br>_____) | No. 1:21-cv-756<br><br>Hon. Paul L. Maloney |

## OPINION DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff Jeanna Norris's motion for preliminary injunction (ECF No. 4). Plaintiff seeks to enjoin Defendants from enforcing the Michigan State University ("MSU") vaccine mandate policy. This Court previously denied Plaintiff's motion for a temporary restraining order, which sought the same relief (ECF No. 3).

### I.

A trial court may issue a preliminary injunction under Federal Rule of Civil Procedure 65. A district court has discretion to grant or deny preliminary injunctions. *Planet Aid v. City of St. Johns, Mich.*, 782 F.3d 318, 323 (6th Cir. 2015). A court must consider each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Northeast Ohio Coalition for Homeless & Service Employees Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

The four factors are not prerequisites that must be established at the outset but are interconnected considerations that must be balanced together. *Northeast Ohio Coalition*, 467 F.3d at 1009; *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (internal citation omitted); see *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).

The purpose of a preliminary injunction is to preserve the status quo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n. 13 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)). The Sixth Circuit has noted that "[a]lthough the four factors must be balanced, the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction." *Patio Enclosures*, 39 F. App'x at 967 (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

## II.

### A. Factor I: Substantial Likelihood of Success on the Merits

The likelihood of success on the merits of Plaintiff's claim hinges in significant measure on the standard of review that this Court must apply given existing appellate authority. "If a protected class or fundamental right is involved, [the court] must apply strict scrutiny, but where no suspect class or fundamental right is implicated, [the court] must apply rational basis review." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir.

2

2005). Because this Court finds that no fundamental right is implicated in the present matter, the Court must apply a rational basis standard.

Under rational basis, the burden is on the Plaintiff to prove that the policy in question is not rationally related to a legitimate government interest. Under rational basis review, the governmental policy at issue "will be afforded a strong presumption of validity" and must be upheld as long as there is a rational relationship between the policy in question and some legitimate government purpose. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Further, "a plaintiff faces a severe burden and must 'negate all possible rational justifications for the distinction.'" *Midkiff*, 409 F.3d at 770 (quoting *Gean v. Hattaway*, 330 F.3d 758, 771 (6th Cir. 2003)).

Although Plaintiff advocates that strict scrutiny should apply because MSU's vaccine policy violates her fundamental rights to privacy and bodily integrity under the Fourteenth Amendment, this argument is without merit. Plaintiff is absolutely correct that she possesses those rights, but there is no fundamental right to decline a vaccination. *See Hanzel v. Arter*, 625 F. Supp. 1259, 1261-63) (explaining that "contraception, abortion, and vaccination" all involve bodily autonomy, yet bodily autonomy has not been deemed a "fundamental" right). She also does not have a constitutionally protected interest in her job at MSU, which Plaintiff's counsel conceded. The MSU vaccine policy does not force Plaintiff to forgo her rights to privacy and bodily autonomy, but if she chooses not to be vaccinated, she does not have the right to work at MSU at the same time (*see* ECF No. 7 at PageID.347-48) (discussing that Plaintiff, as an at-will employee, does not have a constitutionally protected property

3

interest in her job). The MSU vaccine policy does not violate any of Plaintiff's fundamental rights.

Plaintiff attempted to distinguish her case from *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) but was unsuccessful. She argues that her case is different because *Jacobson* never considered natural immunity, and because the policy in *Jacobson* was subject to bicameralism and presentment to the Massachusetts legislature, while the MSU policy was not. First, the asserted factual differences between *Jacobson* and Plaintiff's case are not relevant. Over the last year and a half, courts have looked to *Jacobson* to infer that a rational basis standard applies to generally applicable vaccine mandates; the facts of the case are obviously not going to be identical to every COVID vaccine case that has been or is currently being litigated. *See, e.g., Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Plaintiffs assert that the rational-basis standard used in *Jacobson* does not offer enough protection for their interests and that courts should not be as deferential to the decisions of public bodies as *Jacobson* was, but a court of appeals must apply the law established by the Supreme Court."); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (stating that *Jacobson* essentially applied a rational basis standard); *Harris v. Univ. of Mass., Lowell*, No. 21-cv-11244-DJC, 2021 WL 3848012 (D. Mass. Aug. 27, 2021) (applying rational basis to the university's "generally applicable public health measure[]"). This Court must apply the law from the Supreme Court: *Jacobson* essentially applied rational basis review and found that the vaccine mandate was rational in "protect[ing] the public health and public safety." 197 U.S. at 25-26. The Court cannot ignore this binding precedent.

4

Similarly unpersuasive is Plaintiff's unconstitutional conditions argument. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("[T]he unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."). To succeed under this argument, Plaintiff would first have to identify an enumerated right that the vaccine policy coerces her into giving up. *See id.* at 604. As stated above, the MSU vaccine mandate does not violate any of Plaintiff's fundamental rights, so this argument cannot succeed.

Given that rational basis applies to this case, the burden is on Plaintiff to show that the MSU vaccine mandate is not rationally related to a legitimate government interest. Plaintiff provided evidence in the form of testimony and declarations from an expert witness who stated that naturally acquired immunity is just as effective as vaccine immunity (*see* ECF No. 12). She thus argued that it was irrational for MSU to not carve out an exemption in its vaccine mandate for individuals like herself who have naturally acquired immunity from a previous COVID infection. On the other hand, Defendants presented competing evidence from their own expert witness that refuted the effectiveness of naturally acquired immunity (*see* ECF No. 9-1, 17). The Court heard the battle of the experts, and they essentially presented that there is ongoing scientific debate about the effectiveness of naturally acquired immunity versus vaccine immunity. In creating its vaccine policy, Defendants relied on guidance from the CDC, FDA, MDHHS, and other federal and state agencies that have extensively studied the COVID-19 vaccine. Put plainly, even if there is vigorous ongoing discussion about the effectiveness of natural immunity, it is rational for MSU to rely on

5

present federal and state guidance in creating its vaccine mandate.[1] Thus, Plaintiff has failed to show that the MSU vaccine mandate does not meet rational basis. She is unlikely to succeed on the merits of her claim.[2]

Finally, the Court notes a recent case out of the Central District of California: *Kheriaty v. Regents of the University of California*, No. 8:21-cv-01367 (C.D. Cal. Sept. 29, 2021). The facts of this case are very similar to the present case. In *Kheriaty*, a professor at the University of California claimed to be naturally immune to COVID-19 due to a COVID infection he suffered in 2020, just as Ms. Norris. *Id.* at 1. He sought an injunction preventing the University from enforcing its vaccine mandate against him because he alleged his prior infection gave him superior immunity to COVID than vaccinated individuals. *Id.* In denying Mr. Kheriaty's injunctive relief, the district court applied a rational basis standard under *Jacobson* and found that despite competing studies and evidence on natural immunity, it was not irrational for the University to implement a vaccine mandate. *Id.* at 8. The University relied on CDC guidance and clinical trials that supported the effectiveness of the COVID

---

[1] *See, e.g., New CDC Study: Vaccination Offers Higher Protection Than Previous COVID-19 Infection*, CDC (Aug. 6, 2021, 1:00 PM), https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html. The Court also notes the letter from U.S. Senator Roger Marshall of Kansas, himself an M.D., and co-signed by fellow Doctors Caucus members of the House and Senate, urging the CDC to recognize COVID-19 natural immunity in future guidance policies. The letter references studies identifying the efficacy of natural immunity.

[2] Plaintiff makes two alternative arguments for why she is likely to succeed on the merits. First, she argues that MSU did not have the power to implement its vaccine mandate in the first place because it is exercising police power in doing so, and the Michigan legislature has never delegated such power to MSU. This argument is completely without merit because the Michigan Constitution gives MSU's "governing board[] authority over 'the absolute management of the University.'" Mich. Const. art. 8 § 5. MSU certainly has the power to implement its vaccine policy because the Board of Trustees has the broad power to govern the university. Second, Plaintiff argues that the MSU vaccine policy is preempted under the federal Emergency Use Authorization ("EUA") statute. *See* 21 U.S.C. § 360bbb-3. She argues that the vaccine mandate "actually conflicts" with the EUA, and it is thus preempted (ECF No. 4-1 at PageID.210). The basis of Plaintiff's argument is that the EUA requires medical providers to obtain informed consent from individuals receiving an EUA vaccination and to provide those individuals the option to accept or refuse administration of that vaccine. *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II). MSU's policy does not preclude Plaintiff from receiving informed consent, nor does it prevent her from accepting or refusing administration of the vaccine. Rather, the vaccine is a condition of employment, which Plaintiff does not have a constitutionally protected interest in. There is no preemption issue here.

6

vaccine, which is enough to meet rational basis. *Id.* at 3. Specifically regarding competing evidence on natural immunity versus vaccine immunity, the court stated, "merely drawing different conclusions based on consideration of scientific evidence does not render the Vaccine Policy arbitrary and irrational." *Id.* at 10. Although the Court recognizes that *Kheriaty* is merely persuasive authority, it strengthens the Court's position that a rational basis standard applies to the present matter and that a university policy choice in its vaccine mandate is not irrational.

### B. Factor II: Irreparable Harm

An irreparable harm is an extraordinary harm that cannot be properly compensated by money damages. *See Winter v. NRDC*, 555 U.S. 7, 22 (2008). Plaintiff's only contention of irreparable harm is that she will be deprived of at least one constitutional right if MSU enforces its vaccine mandate against her. First, as stated above, Plaintiff's constitutional rights are not violated by MSU's vaccine mandate. Second, if Plaintiff was eventually unlawfully terminated, she would have proper money damages (*see* ECF No. 7 at PageID.349-50). Plaintiff's damages would be her lost wages, cost of health insurance coverage, and other compensable benefits that she receives from her job. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 579 (6th Cir. 2002) ("[T]he loss of a job is quintessentially reparable by money damages."). The Court appreciates and does not discredit that if Plaintiff was improperly terminated, she would face a great financial burden in waiting for this case to be fully litigated and receive these damages. But that is not an irreparable harm. Because Plaintiff faces no constitutional violation and she would have proper monetary compensation

in the event of a wrongful termination, Plaintiff cannot show that she will face an irreparable harm without an injunction.

### C. Factors III & IV: The Equities

The equities weigh in favor of denying Plaintiff's motion for preliminary injunction. If MSU's vaccine mandate is not enforced, the harm to others and the public could be serious, according to health officials. The goal of the mandate is to prevent the spread of COVID-19 and keep people safe. Enjoining MSU's policy would increase risk based on the current record. This factor weighs in favor of Defendants.

### D. Balancing the Factors

All factors weigh in favor of denying Plaintiff's motion for preliminary injunction, so Plaintiff's motion must be denied. This denial maintains the status quo by keeping the existing vaccine mandate in place at MSU, which is the purpose of a preliminary injunction.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for preliminary injunction (ECF No. 4) is **DENIED.**

Date: October 8, 2021                           /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge