UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNA NORRIS, et al.,                          )
                              Plaintiffs,        )
                                                 )          No. 1:21-cv-756
-v-                                              )
                                                 )          Honorable Paul L. Maloney
SAMUEL L. STANLEY, JR., et al.,                  )
                              Defendants.         )
_____            )

## OPINION AND ORDER GRANTING IN PART AND RESERVING IN PART DEFENDANTS' MOTION TO DISMISS

Pending before the Court is Defendants' motion to dismiss Plaintiffs' first amended complaint (ECF No. 59) pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court will grant the motion as to Counts II and III and reserve on the motion as to Count I. Upon further argument, the Court will issue a subsequent order regarding Count I.

### I. Facts

In light of the coronavirus pandemic, colleges and universities around the country have implemented COVID-19 vaccine mandates for their staff and students. Michigan State University (MSU), the employer/former employer of the Plaintiffs in this matter, has followed this trend. MSU established its COVID-19 vaccine policy in the fall of 2021. The university's president, Dr. Samuel Stanley, Jr., announced the policy on July 30, 2021 (*see* ECF No. 55-1 at PageID.1327). It requires all faculty, staff, and students to be fully vaccinated against COVID-19 or have an approved religious or medical exemption (*see* ECF No. 60 at

PageID.1355).[1] When MSU originally announced the policy, faculty, staff, and students were required to have received at least one dose of the COVID-19 vaccine by August 31, 2021, or they could be subject to disciplinary action such as termination or suspension (ECF No. 55-1 at PageID.1330). MSU has continued this policy into the Spring 2022 semester.

The Plaintiffs in this matter are three employees/former employees of MSU. They all argue that they should be exempt from MSU's vaccine policy because they have acquired "natural immunity" from COVID-19 due to their previous COVID infections. Plaintiff Jeanna Norris is a supervisory Administrative Associate and Fiscal Officer who contracted and recovered from COVID in November 2020 (ECF No. 55 at PageID.1211, ¶¶ 72, 77). Since commencing this action, Plaintiff Norris has received a religious exemption from the MSU vaccine policy, meaning she is no longer required to receive the COVID-19 vaccine to continue her employment at MSU (ECF No. 62 at PageID.1384). Plaintiff Kraig Ehm is a former video producer who contracted COVID-19 in April 2021 (ECF No. 55 at PageID.1212, ¶¶ 82-83). After failing to comply with MSU's vaccine policy, Plaintiff Ehm was terminated from his position on November 3, 2021 (*Id.* at PageID.1212, ¶ 84). Plaintiff D'Ann Rohrer is an Extension Educator who was diagnosed with COVID-19 in August 2021 (*Id.* at PageID.1212-13, ¶¶ 85-86). Because she has refused to receive the COVID-19 vaccine, Plaintiff Rohrer has been placed on unpaid leave (*Id.* at PageID.1213, ¶ 87).

Plaintiffs brought this lawsuit seeking injunctive relief, declaratory relief, and nominal damages. They argue that the MSU vaccine policy violates their substantive due process

---

[1] See *COVID Directives*, Mich. St. U., https://msu.edu/together-we-will/directives.html (last updated Jan. 7, 2022) for the full policy.

2

rights to liberty and privacy by infringing on their bodily autonomy and right to refuse unwanted medical treatment; that the MSU vaccine policy creates an unconstitutional condition, which in turn creates a procedural due process violation; and that the MSU vaccine policy violates the Supremacy Clause because the vaccine policy conflicts with the federal Emergency Use Authorization (EUA) statute (*see generally* ECF No. 55). Plaintiffs have already asked this Court for a temporary restraining order and preliminary injunction enjoining the MSU vaccine policy. The Court denied both requests (ECF Nos. 7, 42). Defendants now seek to dismiss the first amended complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

3

the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

#### A.  Count I – Substantive Due Process

As this Court stated in its order denying Plaintiff Norris's[2] motion for a preliminary injunction, the likelihood of success on the merits in this lawsuit "hinges in significant measure on the standard of review that this Court must apply given existing appellate

---

[2] At the beginning stages of this litigation, Plaintiff Norris was the only plaintiff in the matter. Plaintiff Ehm Rohrer were later added pursuant to the first amended complaint (ECF No. 55) after the Court had denied Plaintiff Norris's requests for a temporary restraining order and preliminary injunction.

authority" (ECF No. 42 at PageID.821). In this matter, the Court has twice held that rational basis scrutiny applies because the MSU vaccine policy does not implicate any fundamental right under the Constitution (*see* ECF Nos. 7, 42); *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005) ("If a protected class or fundamental right is involved, [the court] must apply strict scrutiny, but where no suspect class or fundamental right is implicated, [the court] must apply rational basis review.").

Although Plaintiffs still zealously assert that strict scrutiny applies, the Court is not persuaded. Plaintiffs urge the Court to distinguish the present matter from *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), the landmark case regarding a smallpox vaccine mandate that has since then provided the basis for many other vaccine mandates. Yet, courts in numerous jurisdictions have applied *Jacobson* to the present-day COVID-19 vaccine mandates, and they have found that *Jacobson* requires a rational basis standard of review for such cases. *See, e.g., Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Plaintiffs assert that the rational-basis standard used in *Jacobson* does not offer enough protection for their interests and that courts should not be as deferential to the decisions of public bodies as *Jacobson* was, but a court of appeals must apply the law established by the Supreme Court."); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (stating that *Jacobson* "essentially applied a rational basis review"); *Bauer v. Summey*, __ F. Supp. 3d __, 2021 WL 4900922, at *10 (D.S.C. 2021) ("Since *Jacobson*, federal courts have consistently held that vaccine mandates do not implicate a fundamental right and, accordingly, applied rational basis review in determining the constitutionality of such mandates.") (collecting cases).

Based on the binding *Jacobson* precedent and consistent case law regarding COVID-19 vaccine mandates, the Court again holds that rational basis scrutiny applies to this matter, which involves a generally applicable vaccine mandate that does not implicate fundamental rights protected under the Constitution.

However, in evaluating Plaintiff Norris's requests for a temporary restraining order and preliminary injunction, although the Court found that Plaintiff Norris was unlikely to succeed on the merits of her substantive due process claim after applying rational basis review, the Court is not inclined to dismiss this claim on a motion to dismiss. Plaintiffs' substantive due process claim asserts that MSU's vaccine policy violates Plaintiffs' liberty interests by forcing them to forgo their rights to bodily autonomy and to decline medical treatment. Because there is robust debate surrounding the efficacy of natural immunity versus vaccine immunity, the Court would prefer to hear further argument on whether MSU's vaccine policy does or does not survive rational basis review for failing to include an exemption for people who have acquired "natural immunity" to COVID from a previous infection. The Court will decide whether Count I survives Defendants' motion to dismiss subsequent to additional oral argument before this Court.

## B.  Count II – Unconstitutional Conditions & Procedural Due Process

Plaintiffs also assert that the MSU vaccine policy violates the unconstitutional conditions doctrine because it coerces Plaintiffs into waiving a constitutional right (*see* ECF No. 55 at PageID.1229-34). Although Plaintiffs argue that they need not allege a violation of an enumerated right—that is, they argue that a violation of *any* constitutional right is sufficient

to assert an unconstitutional conditions claim—the Court still finds this argument unpersuasive. Consequently, it cannot survive Defendants' motion to dismiss.

"Under the unconstitutional conditions doctrine, the government may not deny a benefit to a person on a basis that infringes a constitutionally protected right, even if the person has no entitlement to that benefit." *Thompson v. City of Oakwood*, 307 F. Supp. 3d 761, 778 (S.D. Ohio 2018) (citing *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 59 (2006)). This doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). For example, a California rule that required anyone who sought to take advantage of a property tax exemption to sign a declaration stating that he or she would not advocate for the forcible overthrow of the federal government was a violation of the unconstitutional conditions doctrine. *See Speiser v. Randall*, 357 U.S. 513 (1958). Forcing individuals to waive their right to freedom of speech in this scenario to receive a tax exemption was a clear unconstitutional condition. *See id.* at 518. And although this doctrine is typically associated with enumerated rights, it may apply to coercion by the government involving any constitutional right. *See Memorial Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) (holding that an Arizona statute that required an individual to reside in a county for at least one year as a condition for receiving nonemergency hospitalization or medical care at the county's expense was an unconstitutional condition that impeded on the right to interstate travel).

While the parties dispute whether this doctrine only applies to enumerated rights or whether it applies to any constitutional right, this dispute is immaterial. Based on *Maricopa*

*County*, the Court finds that the unconstitutional conditions doctrine can indeed apply to governmental coercion encouraging the waiver of a non-enumerated right. However, what the parties have failed to observe is that there is no governmental *benefit* at issue in the present matter. *See Thompson*, 307 F. Supp. 3d at 778 ("Under the unconstitutional conditions doctrine, the government may not deny a *benefit* to a person on a basis that infringes a constitutionally protected right, even if the person has no entitlement to that *benefit*.") (emphasis added). The MSU vaccine policy does not coerce Plaintiffs into waiving their constitutional rights to bodily autonomy and to decline medical treatment in order to receive a governmental benefit such as a tax exemption, medical treatment, or some sort of governmental funding. Instead, the "benefit" at issue here is Plaintiffs' employment at MSU, to which they are not constitutionally entitled (*see* ECF No. 7 at PageID.348) ("[D]ue to [Plaintiff Norris's] at-will employment status, she does not have a constitutionally protected property interest in her employment position."). Because of the lack of a governmental benefit at issue in this matter, the Court finds that Plaintiffs have failed to plead sufficient facts to allege a violation of the unconstitutional conditions doctrine to survive Defendants' motion to dismiss.

Also under Count II, Plaintiffs vaguely assert a violation of their procedural due process rights (*see* ECF No. 55 at PageID.1231-32, ¶¶ 166-71). Plaintiffs argue that there is a "concurrent" procedural due process violation along with an unconstitutional condition because MSU's vaccine policy "flip[s] the burden of proof and require[s] Plaintiffs . . . to prove that it is safe for them to perform their respective jobs while unvaccinated" (*Id.* at PageID.1232, ¶ 171).

"In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Defendants argue that Plaintiffs' procedural due process claim must be dismissed because Plaintiffs have failed to state a prima facie case for such a claim (ECF No. 60 at PageID.1363). Defendants assert that Plaintiffs have failed to show that a life, liberty, or property interest is at issue. Although Plaintiffs plead that they "possess a liberty interest in their bodily integrity, a property interest in their careers, and a statutory interest in informed consent" (ECF No. 55 at PageID.1229, ¶ 160), Defendants argue that these are legal conclusions that need not be accepted as true on a motion to dismiss.

Plaintiffs' procedural due process argument fails for numerous reasons. First, Plaintiffs failed to respond to this argument in their response to Defendants' motion to dismiss. "Where a party fails to respond to an argument in a motion to dismiss 'the Court assumes he concedes this point and abandons the claim.'" *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021) (citing *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007)). Therefore, by failing to respond to Defendants' arguments regarding Plaintiffs' procedural due process claim, Plaintiffs have effectively abandoned this claim, and the Court will grant Defendants' motion to dismiss as to this claim.

Second, even if the Court evaluated the merits of Plaintiffs' procedural due process claim, it would still fail to survive Defendants' motion to dismiss. Plaintiffs cannot establish that the MSU vaccine policy forces them to forgo any constitutional right. And even if the

9

Court found that the vaccine policy deprives Plaintiffs of their liberty interest in their bodily autonomy, they cannot show that they were deprived of adequate process.[3] Where a generally applicable state rule applies to a large number of individuals, the Due Process Clause does not require that each person have an opportunity to be heard regarding the rule's adoption. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("When a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption."). Not only have Plaintiffs failed to allege exactly what "process" they have been denied, but they are likely not entitled to the type of process—i.e., a hearing—that they prefer.

Because Plaintiffs' have effectively abandoned their procedural due process violation claim and because they have failed to allege sufficient facts to support such a claim, the Court will grant Defendants' motion to dismiss this claim.

## C.  Count III – Supremacy Clause

Third, Defendants move to dismiss Count III of the first amended complaint. Plaintiffs argue that the federal EUA statute, 21 U.S.C. § 360bbb-3, mandates voluntary and informed consent because it requires individuals receiving an EUA-authorized vaccine to have the "option to accept or refuse administration of the product." *See id.* § 360bbb-3(e)(1)(A)(ii)(III). Plaintiffs further argue that the MSU vaccine policy "actually conflicts" with

---

[3] Plaintiffs also assert that they have a property interest in their careers. The Court has held multiple times that Plaintiffs possess no such constitutional interest in their employment at MSU (*see* ECF No. 7 at PageID.347; ECF No. 42 at PageID.822-23). Plaintiffs also assert that they have a "statutory interest" in informed consent. In the following section, the Court will explain why MSU's vaccine policy does not violate the EUA statute's informed consent requirement. Thus, neither of these alleged "interests" provide the requisite constitutional protection that a meritorious procedural due process claim requires. These interests will not help Plaintiffs' procedural due process claim survive Defendants' motion to dismiss.

the EUA statute because it does not give employees the option to refuse administration of the COVID-19 vaccine, which they argue leads to the conclusion that the policy is preempted pursuant to the Supremacy Clause (ECF No. 55 at PageID.1235).

The Court has already rejected the merits of this argument (*see* ECF No. 42 at PageID.825, n.2). The MSU vaccine policy does not preclude Plaintiffs from receiving informed consent regarding the COVID-19 vaccine, nor does it preclude Plaintiffs from refusing the vaccine. Plaintiffs may refuse administration of the vaccine, but pursuant to the MSU vaccine policy, they may also be terminated from MSU if they do so. The Court reiterates its reasoning from the order denying Plaintiffs' motion for a preliminary injunction: "[T]he vaccine is a condition of employment, which Plaintiff does not have a constitutionally protected interest in" (*Id.*). MSU's vaccine policy does not conflict with the EUA statute; this argument is without merit. The Court finds that Plaintiffs have failed to plead sufficient facts to allege a violation of the EUA, and in turn, a violation of the Supremacy Clause due to preemption.

Moreover, Defendants also moved to dismiss this argument because the EUA statute does not provide a private right of action (*see* ECF No. 60 at PageID.1365); 21 U.S.C. § 337(a) ("[A]ll . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). While Plaintiffs concede that the EUA does not provide a private right of action, they argue that they may seek injunctive relief to "cease the violation of their rights to informed consent" under the EUA (ECF No. 62 at PageID.1402). Even if the Court accepted this argument, it does not support sufficient facts

11

to allege preemption. Consequently, Count III of Plaintiffs' first amended complaint must also be dismissed for this reason.

### D.  Plaintiffs' "Remaining Claims"

Finally, Defendants move to dismiss Plaintiffs' "remaining claims," arising out of the 1947 Nuremberg Code, Helsinki Declaration, and HHS Policy for Protection of Human Research Subjects (*see* ECF No. 60 at PageID.1368). In their response to the motion to dismiss, Plaintiffs noted that they cited these various international treaties to establish that the MSU vaccine policy "violates various principles of human rights law and are not in accord with constitutional or international norms," not because they are bringing claims under these treaties (ECF No. 62 at PageID.1406). The Court accepts this assertion. Because Plaintiffs are not seeking relief under these treaties, the Court need not "dismiss" these claims.

## IV. Conclusion

The Court finds that Counts II and III of Plaintiffs' first amended complaint fail to withstand Defendants' motion to dismiss, and that the dismissal of Count I will be decided upon further argument. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 59) is **GRANTED** as to Counts II and III and **RESERVED** as to Count I. Counts II and III are dismissed with prejudice.

12

**IT IS FURTHER ORDERED** that a notice of hearing on Count I of the motion to dismiss shall issue contemporaneously with this order.

**IT IS SO ORDERED.**

Date:  January 21, 2022                                     /s/ Paul L. Maloney
                                                              Paul L. Maloney
                                                              United States District Judge